O’Neall J.
Ail the questions now made in this were in effect decided by the Court in the former 0pinj0n, but as the defendant’s counsel appeared to be dissatisfied with that decision, we have at his request reconsidered it, and are fully satisfied with its correctness, both from the reasons assigned in it, and also from the authorities to which he has referred.
The leading case on the subject is the case of Bethel v. Stanhope, Cro. Eliz. 810: it was a scire facias against the defendant as executor of T. Vaughan.—The issue was whether he had assets, it appeared that the testator was possessed of goods to the value of £250, and by covin to defraud his creditors, made a gift of his goods to his daughter, with a condition upon payment of 20 s. that it should be void. The defendant intermeddled with the goods, and afterwards the *247 daughter, by this gift, took them; and after that- administration of the goods of T. Vaughan, was committed to the defendant. It was held, 1st, that he was chargeable as executor by the fact of his intermed-dling; and 2nd. that the gift of the goods was fraudulent, and that they were assets in the defendant’s hands ; the reason assigned for the second point ruled in that case marks the distinction between it and the case under consideration. “ The intestate died possessed of them; and when the donee afterwards took them, it is a trespass against .the administrator for which he hath his remedy, and they are always assets in his hands.. But if a trespasser takes goods from a testator in his life time, so as they never were but a chose in action to the executor or administrator, they are not assets until they are recovered. Wherefore, notwithstanding this taldng of them by the donee, yet they always remained as assets in the hands of the administrator, and therefore he is chargeable for them as executor do son tort, by his intermeddling with them before administration committed; and the goods by law always remained in his possession.” Two circumstances concurred in the case of Bethel v. Stanhope to make the goods assets in the hands of the defendant, 1st. the fact that the deceased at the time of his death was possessed of them; 2nd, that the defendant had possession before they went into the possession of the voluntary donee. In this case, for any thing which appears, the plaintiffs had possession in the life time of the intestate ; and his administrator certainly never had the possession. It follows therefore from the case of Bethel v. Stanhope, that the slave conveyed to the plaintiffs, could not be assets in the hands of the administrator; and if so, I apprehend, she could not be sold under an execution, against the goods of the deceased in his hands to be administered. If the administrator could have recovered her by action, she, or her value, would not have been assets until recovered. But the administrator could not recover, for the reasons assigned in the former opinion, and hence the negro never could have been legal assets liable to the execution against him.
*248 In the case of Hawes v. Leader, Cro. Jac. 271, it was held, that the defendant, the administrator of a donor, could not avoid his gift on the ground that his intestate was indebted; and that the donee was entitled to the possession of the goods ; for notwithstanding the grant of administration to the defendant, the plaintiff the donee would be liable to the creditors, as an executor de son tort, if the gift be fraudulent. See also, Rob. on Fraudulent Conveyances, 594. This case shews that the goods voluntarily conveyed by the intestate, cannot he made liable to the creditors, by any act of the administrator. For if, as against him, the title of the dobee is good, it would follow, that a judgment against the former, cannot divest the latter of his property. According to the case of Hawes v. Leader, the donees, notwithstanding the grant of administration to another, might be sued as executors de son tort; but I doubt this position, and still incline to think the proper remedy in such a case, would be in Equity. For I think that there can be ho such a two-fold character as executor and administrator subsisting in law at the same time, of the same person. Bat whether the donee is liable to be sued, in such a case, as executor de son tort, or not, it shews clearly that his title is paramount to the administrator’s, and can only be divested by some proceeding of the creditors against him, in which he may be heard in defence of his title.
The case of Edwards v. Harben, 2 T. R. 587, 597, supports the position that where a person makes a fraudulent conveyance of his goods, and dies possessed of them, and after his death the grantee possesses himself of them, and there is no administration, he may be charged by the creditors, as an executor de son tort. In such a case, the grantee as defendant has the opportunity of defending his title. For the very issue to establish his liability to be charged as executor de son tort, requires the covin in the conveyance to be first established. But if by administering, and suffering judgment to go by default, the property conveyed by the intestate in his life time would be liable *249 to be seized and sold in execution, there would be no necessity to charge the grantee, as executor de son tort.
Bausket & Wallace, for the motion.
Butler & Griffin, contra.
I agree with the case of Bethel v. Stanhope, and with Mr. Roberts in his comments at page 594, that if the administrator has possesson of the goods, and a voluntary donee take them away, that the administrator is chargeable with their value, as assets. But the case of Chappell v. Brown, decided at this place, Spring Term, 1830, held, that the administrator in such a case was not liable; and that decision, and not my opinion, must be regarded as law, until reviewed and reversed.
The motion for a new trial is dismissed.(a)
Johnson J. concurred.'
Harper J. absent.

On (he first trial.of this case, the defendant obtained a verdict: on appeal to this Court, January, 1833, '
O’Neaia, J. delivered the opinion of the Court.
(a) The administrator, has by law, the right of property in all the ' goods, chattels, and credits which were of his intestate at the time of his death ¡ but it is clear that be cannot, at law, set up any claim of property which his intestate could not. He cannot, therefore, avoid even his voluntary conveyance, for it is,good, as between the parties to it, and, necessarily, it must be good against the administrator or executor of either of the parties. The fact of the indebtedness of the intestate at the execution of the conveyance, cannot be set up by the administrator, to avoid it. (See Crosbey v. Shelton, decided by the Court of Appeals, Spring Term, 1830.) In this view of the case, the slave could never have been made assets by the administrator, and he was not the property of the intestate, so far as the rights of himself or his administrator were concerned. It is true that this conveyance could not prejudice the rights of creditors; if they could not otherwise be paid, they would have the right to the property which he had voluntarily conveyed. But it remains to be seen, whether, under an execution against the goods and chattels of the *250 intestate, iii the hands of the administrator to be administered, a stave or any chattel which the intestate may have voluntarily conveyed away, could be seized in execution? We have already seen that she was not any part of the goods, chattels, and credits of the intestate, which could come to the hands of the administrator, to be administered. It would therefore, appear to be a necessary consequence, that she is hot embraced in the description of the property against which the execution issuers.— The'property of the intestate, is by operation of law, vested in his ad. ministrator, and it is against the property so vested, that the execution goes; for it is both as the representative of the intestate, and also as the legal owner of his goods, chattels and credits, out of which his debts are to be paid, that the administrator must be a party, to all suits brought to recover any of the debts due by his intestate. In this point of view, the goods, chattels and credits in his hands, are condemned by the judgment of the Court, and appropriated to their payment. If, on an execution against him, the sheriff is unable to find any of the goods and chattels of the intestate in his hands to be administered, he ought to return “ nulla bona,1’ and the creditor then has his remedy for the devastavit,against the proper goods and chattels of the administrator. If, after a judgment against the goods and chattels, in the hands of the administrator, to be administered, he was to be permitted to evade its payment by turning the sheriff over for payment, out of property which his intestate had voluntarily conveyed away, it would be, in effect, allowing him to pay a debt, which he was ultimately liable to pay, out of the property of another. If the administrator had pleaded pleno admmistramt, and it had been confessed or found for him, and the judgment had been for assets quando acciderint, I am not prepared to say, that in such a case, the creditor might not have seisrd the slave in execution. In all events, the creditors, if any there be, who cannot be satisfied out of the funds of the intestate, in the hands of the administrator, would have the right, in equity, to make the property voluntarily conveyed away, liable to the payment of their debts; for as agaiast them, the right of property remains in the intestate; and, inasmuch as the administrator cannot make it available as assets for the payment of debts, they have a clear equity to have a decree, declaring it liable to them, on a Bill filed against the donees and administrator.